UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| Maurice Hardaway, | ) | |
| | ) | No. 12 C 5431 |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Judge Thomas M. Durkin |
| | ) | |
| | ) | |
| Rick Harrington, Warden, | ) | |
| Menard Correctional Center, | ) | |
| | ) | |
| Respondent. | ) | |

**MEMORANDUM OPINION AND ORDER**

Petitioner Maurice Hardaway, a state prisoner serving a term of natural life imprisonment and concurrent thirty-year terms for murder, attempted murder, and home invasion, seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254. R. 1. Respondent Warden Rick Harrington has moved to dismiss the petition as untimely under 28 U.S.C. § 2244(d)(1). R. 13. The Court requested supplemental briefing on the question of whether a start date under § 2244(d)(1)(B) should apply to Hardaway's § 2254 petition and whether equitable tolling is available to him. R. 23. Briefing is now complete on the Warden's motion to dismiss. R. 30, 32. The § 2254 petition is untimely and is therefore dismissed with prejudice. A certificate of appealability is also denied.

1

**Procedural History**

On October 21, 1996, Hardaway and three accomplices killed two individuals and wounded another.[1] R. 13, Exh. B at 2, 9. Two weeks after the crimes, Hardaway gave a statement to police in the presence of an Assistant State's Attorney in which he admitted his involvement in the killings. *Id.*, Exh. B at 2; Exh. F at G145-71 (Hardaway's Self-Incriminating Statement). This statement, which was transcribed by a court reporter, was read into evidence at Hardaway's jury trial. *Id.*, Exh. F at G145-71.

Also presented at trial was the testimony of eyewitness Doris McCarty who identified Hardaway as one of the perpetrators. *Id.*, Exh. B at 6. During her testimony, she admitted that she had: (1) a 1994 conviction for theft for which she received 18 months' probation; (2) two 1997 convictions for theft for which she also received probation; and (3) a 1998 conviction for retail theft. *Id.* at 7. In connection with this last retail theft conviction, McCarty was found to have violated the terms of her probation and was sentenced to six years of imprisonment. *Id.* McCarty added that in February 1999, her prison term was reduced to three years and that she was currently on mandatory supervised release. *Id.* She later testified—outside the presence of the jury but in the presence of Hardaway and his counsel—that she had received no sentencing benefit or other consideration in exchange for her testimony in Hardaway's case. R. 13, Exh. G at H123-25.

---

[1] 28 U.S.C. § 2254(e)(1) cloaks the state court's factual findings in a presumption of correctness. That presumption may be rebutted only by clear and convincing evidence, *id.*, which Hardaway has failed to bring forth. Accordingly, the state court's factual findings are presumed correct.

A jury convicted Hardaway of two counts of first degree murder, attempted murder, and two counts of home invasion in November 1999. *Id.*, Exh. B at 2, 9. Later that year, the trial court sentenced Hardaway to a term of life imprisonment for murder and concurrent 30-year prison terms for his other crimes. *Id.* at 9. On July 18, 2001, the state appellate court vacated one of Hardaway's home-invasion convictions but otherwise affirmed his convictions and sentences. R. 13, Exh. A at 1-2; Exh. B at 9. Hardaway did not file a petition for leave to appeal ("PLA") to the Illinois Supreme Court. *See also* R. 1 at 2.

On October 28, 2002, Hardaway filed a pro se state postconviction petition. R. 13, Exh. B at 1-2, 9; Exh. D. He filed an amended pro se postconviction petition in May 2003 and a counseled supplemental petition in June 2007. R. 13, Exh. B at 9-10. Raised in his supplemental petition for the first time was a claim that the State, in violation of *Brady v. Maryland*, 373 U.S. 83 (1963), failed to disclose that McCarty received her February 1999 sentence reduction in exchange for her trial testimony against Hardaway. R. 13, Exh. B at 9-10. In support of this *Brady* claim, Hardaway relied on a transcript of McCarty's February 1999 hearing on her motion to reduce her sentence. *Id.* at 10-11. At that hearing, the trial court granted the motion, which was based on her participation in a substance abuse-treatment program in prison, after McCarty's lawyer informed the court that the State did not object to the sentence reduction. *Id.* On December 17, 2009, the state postconviction trial court dismissed Hardaway's petition on two grounds: (1) it was untimely; and (2) on the merits, Hardaway had failed to show the existence of an agreement

3

between McCarty and the State, and even if such an agreement existed, it was immaterial under *Brady*. *Id.* at 12; R. 31-2, Exh. I.

Hardaway appealed the December 2009 dismissal, claiming that his *Brady* claim had merit and that he was not culpably negligent for the petition's untimeliness. R. 13, Exh. B at 2. On March 8, 2012, the state appellate court affirmed. *Id*. In doing so, the court did not address Hardaway's timeliness argument; instead, it reached the merits of Hardaway's *Brady* claim, holding that the record did not prove the existence of an agreement between the State and McCarty, and that even if the agreement existed, the presentation of that agreement would not have altered the jury's determination of McCarty's credibility. *Id.* at 17-18. The state appellate court also reasoned that even if the jury rejected McCarty's testimony in its entirety, given the other evidence against Hardaway, there is no reasonable likelihood that the result of Hardaway's trial would have been different. *Id.* On May 30, 2012, the Illinois Supreme Court denied Hardaway's PLA. R. 13, Exh. E.

Hardaway mailed his § 2254 petition to this Court on July 2, 2012. *See Jones v. Bertrand*, 171 F.3d 499, 500 (7th Cir. 1999) (applying prison mailbox rule). The petition raises three claims: (1) the State violated Hardaway's due process rights by failing to disclose the alleged deal it made with McCarty; (2) Hardaway's trial counsel was ineffective for "failing to discover the existence" of that deal; and (3) Hardaway was not culpably negligent in filing an untimely postconviction petition. R. 1 at 2.

## Analysis

Section 2244(d)(1) of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") provides that a "1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court." 28 U.S.C. § 2244(d)(1). This limitation period runs from the latest of:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

§ 2244(d)(1)(A)-(D).

The Warden argues that because Hardaway's § 2254 petition was filed more than a year after (1) the conclusion of direct review, § 2244(d)(1)(A); (2) the date upon which any arguable State-created impediment to filing ended, § 2244(d)(1)(B); and (3) the date on which Hardaway could have discovered the factual predicate of his claims with due diligence, § 2244(d)(1)(D), the petition is untimely.[2]

---

[2] Hardaway does not invoke § 2244(d)(1)(C).

5

Under § 2244(d)(1)(A), Hardaway's state court conviction became final on August 22, 2001, 35 days after the state appellate court's July 18, 2001 judgment, when the time for filing a PLA to appeal the state appellate court's affirmance of his convictions and sentences expired. *See* Ill. Sup. Ct. R. 315(b) (allowing 35 days to file PLA following appellate court's judgment); *see also Gonzalez v. Thaler*, 132 S. Ct. 641, 654 (2012) (where habeas petitioner "did not appeal to the State's highest court, his judgment became final when his time for seeking review with the State's highest court expired"). Thus, the limitations period began running on August 22, 2001 and expired one year later on August 22, 2002. Furthermore, because the § 2244(d) limitations period had already expired, Hardaway's October 28, 2002 postconviction petition did not act to toll the eliminations period under § 2244(d)(2). *See De Jesus v. Acevedo*, 567 F.3d 941, 943 (7th Cir. 2009) (stating "a state proceeding that does not begin until the federal year has expired is irrelevant" for § 2244(d)(2) tolling). Accordingly, by the time Hardaway deposited his § 2254 petition in the Menard Correctional Center postal system on July 2, 2012, it was already approximately ten years too late.

Hardaway does not dispute these calculations. Nor could he. Instead, he asks that the limitations period be measured by applying a start date under § 2244(d)(1)(B) or § 2244(d)(1)(D), the application of which would make his § 2254 petition timely.[3]

---

[3] Although Hardaway does not dispute these calculations, Hardaway's request to assess the timeliness of his § 2254 petition based on § 2244(d)(1)(B) also raises the interrelated question of whether he is entitled to equitable tolling of the limitations

6

Invoking § 2244(d)(1)(D), Hardaway argues that the date on which he discovered the factual basis of the *Brady* violation and his ineffective-assistance claim was the date when he obtained competent postconviction counsel—sometime between 2003 and 2007—who was then able to obtain the transcripts regarding McCarty's 1999 sentence reduction.[4] According to Hardaway, McCarty implicated him in the crimes in exchange for the State's agreement to reduce her 1998 sentence for an unrelated retail theft. Hardaway alleges that the State's failure to disclose this deal violated *Brady* and that "[i]t was only after the transcripts [regarding McCarty's sentencing reduction hearing] were obtained by post-conviction counsel that there was a basis to raise the *Brady* claim." R. 16 at 4.

But, as the Warden argues, it is well-established that the one-year limitations period under § 2244(d)(1)(D) starts not when the factual basis of a claim was actually discovered, but when the factual basis "could have been discovered through the exercise of due diligence." *See* § 2244(d)(1)(D); *e.g. Villanueva v. Anglin*, 719 F.3d 769, 774 (7th Cir. 2013); *Owens v. Boyd*, 235 F.3d 356, 359-60 (7th Cir. 2000) (time for filing runs when evidence could have been discovered through diligence, not when it was actually discovered or significance understood). Here, McCarty testified at trial that she had not received any sentencing benefit or other consideration in exchange for her testimony. R. 13, Exh. B at 7; Exh. G at H40-41 (McCarty testifying at Hardaway's trial that "in February of 1999, this year" her

---

period under § 2244(d)(1)(A). The Court will address this issue when discussing whether § 2244(d)(1)(B) applies.

[4] Because Hardaway's ineffective assistance claim shares a factual basis with his *Brady* claim, the Court conducts the same § 2244(d)(1)(D) analysis for both claims.

7

prison term was reduced to three years). On cross-examination, she testified that she had not received any sentencing consideration in exchange for her testimony. Hardaway was thus aware of the potential theory that she could have received a benefit from the State for her testimony at that point during the trial. *Id.*, Exh. G at H123-25. Accordingly, because Hardaway could have discovered the factual basis of his *Brady* and *Strickland* claims well before his judgment of conviction became final—indeed, the evidence on which the claims are based was known to Hardaway at trial—applying § 2244(d)(1)(D)'s start date does not save Hardaway's § 2254 petition from being untimely.

*Strickler v. Greene*, 527 U.S. 263 (1999), on which Hardaway relies, does not help him. The documents that formed the basis of Strickler's *Brady* claim were, unlike the publicly available trial transcripts from McCarty's 1999 hearing, not publicly available. And again, Hardaway was aware of the theory that McCarty could have received a benefit from the State in exchange from her testimony at the time of trial. Ultimately, measuring the timeliness of Hardaway's § 2254 petition applying a § 2244(d)(1)(D) start date would not make that petition timely.

Hardaway contends that he is entitled to equitable tolling and statutory tolling under § 2244(d)(1)(B). Hardaway's requests for tolling stem from the same factual basis: frequent lockdowns at Menard Correctional Center and "poor library access and assistance" prevented a timely filing. R. 1 at 30. According to Hardaway, from December 1999 to October 28, 2002 (when he filed his state postconviction petition), Menard was on lockdown for 223 days. Hardaway attributes his failure to

8

file a timely postconviction petition to the frequent lockdowns at Menard and his inability to access the law library and its resources, including inmate law clerks. To substantiate this claim, Hardaway attached to his petition an affidavit from Chezeray Moore, an inmate law clerk at Menard Correctional Center from 1998 to January 29, 2004. R. 1-1 at 2. Moore, currently serving a 100-year sentence for murder, avers that while he was an inmate law clerk, Menard went on "numerous lockdowns," and that while the prison was on lockdown, no direct access to the law library and the assistance of inmate law clerks were available to the inmates. *Id.*

Equitable tolling is an "extraordinary remedy," *Obriecht v. Foster*, 727 F.3d 744, 748 (7th Cir. 2013), one that "is rarely granted," *Simms v. Acevedo*, 595 F.3d 774, 781 (7th Cir. 2010) (internal quotation marks omitted). Accordingly, equitable tolling is available only if the habeas petitioner shows "'(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstances stood in his way' and prevented timely filing." *Holland v. Florida*, 130 S. Ct. 2549, 2562 (2010) (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)); *see also Griffith v. Rednour*, 614 F.3d 328, 331 (7th Cir. 2010). It is Hardaway's burden to demonstrate entitlement to equitable tolling. *Taylor v. Michael*, 724 F.3d 806, 810 (7th Cir. 2013); *see also Pace*, 544 U.S. at 418.

Attached to the Warden's supplemental brief were records from Menard Correctional Center produced in response to a subpoena issued during Hardaway's state postconviction proceedings. The subpoena requested records of institutional lockdowns that occurred at Menard from December 1999 through October 2002. R.

31-1 at 3-6. These records contradict Hardaway's assertion that "for 223 days during the pend[en]cy of the limitation[s] period for the filing of [Hardaway's] post-conviction petition" lockdowns at the prison prevented him from accessing the law library. R. 16 at 13. What the records instead reveal is that those 223 days of claimed-lockdown days occurred during the nearly three-year span between "December 1999 and October 2002." *Id.*

Under Illinois law, Hardaway could have filed his postconviction petition between August 22, 2001 (the last day on which he could have filed a direct appeal PLA) and February 22, 2002.[5] Hardaway did not file his postconviction petition until October 28, 2002. Significantly, the lockdown records demonstrate that during the 184 days between August 22, 2001 and February 22, 2002, Menard was on lockdown for 64 days. R. 31-1 at 5-6. Subtracting these 64 days from the relevant time period (184 days) reveals that Hardaway had 120 lockdown-free days within which to file a timely postconviction petition that would have tolled the limitations period under § 2244(d)(2).[6] And during the time between the conclusion of

---

[5] During this time, Illinois law afforded state prisoners six months "after the denial of a petition for leave to appeal or the date for filing such a petition if none is filed" to file a postconviction petition. 725 ILCS 5/122-1(c) (2002) ("[N]o proceedings under this Article shall be commenced more than 6 months after the denial of a petition for leave to appeal or the date for filing such a petition if none is filed . . . or 3 years from the date of conviction, whichever is sooner, unless the petitioner alleges facts showing that the delay was not due to his or her culpable negligence.").

[6] This lockdown evidence demonstrating that Hardaway had sufficient time to file his postconviction petition comports with the state postconviction trial court's finding that he "failed to allege facts sufficient" to excuse his late filing. R. 30, Exh. I at 2; *see also id.* (finding Hardaway "[c]learly . . . had ample time to file [his

Hardaway's direct review on August 22, 2001 and the date on which the one-year limitations period expired on August 22, 2002, lockdowns occurred for 131 days. R. 31-1 at 5-6. This means that Hardaway had 234 days (out of 365) that were lockdown-free after the conclusion of direct review within which to timely file his § 2254 petition.

Accordingly, the record makes plain that Hardaway had ample time to file a timely state postconviction petition that would have tolled AEDPA's limitations period under § 2244(d)(2) and a timely § 2254 petition. Hardaway has not demonstrated that 131 days of lockdowns and the concomitant inability to access the law library during that time constituted "extraordinary circumstances [that] stood in [the] way" of a timely filing. *Griffith*, 614 F.3d at 331 (internal quotation marks omitted). Nor has he demonstrated diligent pursuit of his rights. *Holland*, 130 S. Ct. at 2562. Having failed to demonstrate either of these things, Hardaway has failed to satisfy his burden of demonstrating entitlement to equitable tolling. *See, e.g.*, *Jones v. Hulick*, 449 F.3d 784, 789 (7th Cir. 2006) (equitable tolling not available where habeas petitioner had no access to law library during 60 days while in segregation and had severely limited access to library at all other times); *Jackson v. Rednour*, No. 10 C 6709, 2011 WL 5980984, at *2 (N.D. Ill. Nov. 28, 2011) (denying equitable tolling where habeas petitioner had "approximately 100 days" when his cellhouse was not on lockdown, "more than enough time to visit the legal library and consult the necessary legal materials") (collecting cases); *Plummer v.*

---

petition]" and "had sufficient time to comply with the statutory filing requirements").

*Gaetz*, No. 08 C 1885, 2009 WL 458620, at *3 (N.D. Ill. Feb. 23. 2009) (rejecting equitable tolling where petitioner was not on lockdown for 87 of 159 days preceding expiration of AEDPA's one-year limitations period); *Campbell v. Bartley*, No. 06-1293, 2007 WL 1257167, at *3 (C.D. Ill. Apr. 30, 2007) (denying equitable tolling where petitioner was in segregation for 120 days without "access to his legal material or any adequate legal advi[c]e").

The record reveals that Hardaway is similarly unable to avail himself of statutory tolling under § 2244(d)(1)(B). Section 2244(d)(1)(B) allows for the running of the limitations period from "the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action." *Moore v. Battaglia*, 476 F.3d 504, 506 (7th Cir. 2002) (quoting § 2244(d)(1)(B)); *see also Lloyd v. Van Natta*, 296 F.3d 630, 633 (7th Cir. 2002) (stating that "whatever constitutes an impediment [under § 2244(d)(1)(B)] must *prevent* a prisoner from filing his petition") (emphasis in original). In *Moore*, the Seventh Circuit reserved the question of whether lack of library access could qualify as a state-created impediment warranting statutory tolling under § 2244(d)(1)(B). 476 F.3d at 508. The Seventh Circuit recently answered that question, concluding that it could. *Estremera v. U.S.*, 724 F.3d 773, 776 (7th Cir. 2013) ("Lack of library access can, in principle, be an 'impediment' to the filing of a collateral attack.").

But while the "absence of library access may be an 'impediment' in principle is not necessarily to say that lack of access was an impediment for a given prisoner."

12

*Id.* at 777. And here, the record demonstrates that the particular circumstances of Hardaway's incarceration at Menard do not warrant statutory tolling. Again, lockdown records establish that after the conclusion of his direct review, Hardaway had 234 days when Menard was not on lockdown to file a timely § 2254 petition. They also establish that 39 of those 234 days preceded the expiration of his one-year limitations period. R. 31-1 at 3, 5-6. Hardaway thus cannot demonstrate that lockdowns prevented him from filing his § 2254 petition during the limitations period on days when he was not on lockdown.[7] *See Taylor*, 724 F.3d at 811-12 ("When an inmate, despite roadblocks thrown in his way, has reasonable time remaining to file a habeas petition in a timely manner, the circumstances cannot, as a definitional matter, be said to have prevented timely filing."); *Moore*, 476 F.3d at 506-07; *cf. Jackson*, 2011 WL 5980984, at *3 (holding that where habeas petitioner was on lockdown during last 40 days of limitations period and had 100 previous lockdown-free days, that period did not prevent him from timely filing § 2254 petition) (collecting cases).

Hardaway also alleges that hearing difficulties prevented him from filing a timely postconviction petition. R. 1 at 30-31. Hardaway's hearing difficulties do not warrant a later start date under § 2244(d)(1)(B) either. According to Hardaway,

---

[7] The Warden suggests that intermittent lockdowns, like the ones Hardaway experienced, are insufficient to amount to a state-created impediment under § 2244(d)(1)(B). According to the Warden, § 2244(d)(1)(B) contemplates an uninterrupted impediment from whose removal the one-year limitations can be measured, not a series of intermittent obstacles interspersed with time periods during which the obstacles are absent. The Court need not reach this question because of the finding that Hardaway has failed to demonstrate that the lockdowns at Menard prevented him from timely filing his habeas petition.

13

from 1998 to 1999, he suffered from hearing problems while in the county jail awaiting trial. R. 1 at 30. Tests at the county jail hospital revealed that he was deaf in his right ear. *Id.* Hardaway alleges that while he was incarcerated at Menard, he began to suffer similar defects in his left ear. *Id.* But as Hardaway later concedes, he "continue[d] to research and draw up [his] postconviction petition" while addressing his hearing loss. *Id.* at 31. And as the Warden points out, the documents Hardaway attaches in support of his hearing loss claim merely establish that he had several medical appointments related to his ears between December 3, 1998 and January 14, 2000. R. 1-1 at 7-14; R. 1-2 at 1-6. These appointments predate the finality of Hardaway's conviction—his judgment of conviction became final on August 22, 2001—and Hardaway has not explained how his hearing loss, if any, prevented him from making timely filings after that date. In any event, Hardaway's hearing loss is not a *state*-created impediment under § 2244(d)(1)(B) that prevented him from timely filing his § 2254 petition.

Moreover, to the extent Hardaway's claim regarding his hearing loss could be construed as a request for equitable tolling of the limitations period under § 2244(d)(1)(A), that claim cannot succeed. Even assuming Hardaway exercised diligence in pursuing his rights, Hardaway has not demonstrated that his hearing loss is an extraordinary circumstance that stood in the way of a timely filing.

In sum, Hardaway's § 2254 petition, when measured applying the applicable § 2244(d)(1)(A) start date (not § 2244(d)(1)(B) or § 2244(d)(1)(D)), is untimely. Applying this start date, the limitations period expired on August 22, 2002, one

year after Hardaway's judgment of conviction became final. Because Hardaway is not eligible for equitable tolling of the limitations period, Hardaway's § 2254 petition, mailed on July 2, 2012, was almost ten years late.

For these reasons, the Warden's motion to dismiss is granted, and Hardaway's petition is dismissed as untimely. Rule 11(a) of the Rules Governing § 2254 Cases provides that the district court "must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." To obtain a certificate of appealability, a habeas petitioner must make "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); *see also Lavin v. Rednour*, 641 F.3d 830, 832 (7th Cir. 2011). And where a petition is disposed of based on a procedural bar, without reaching the merits of the underlying constitutional claims, a certificate of appealability should issue only if reasonable jurists would find the adjudication of the antecedent procedural ruling "debatable." *Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000); *see also Lavin*, 641 F.3d at 832. Because the untimeliness of Hardaway's petition is not debatable, a certificate of appealability is denied. *See Slack*, 529 U.S. at 584. ("Where a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petitioner should be allowed to proceed further. In such a circumstance, no appeal would be warranted.").

15

**Conclusion**

For the foregoing reasons, the Court grants the Warden's motion to dismiss Hardaway's § 2254 petition. R. 13. The § 2254 petition is dismissed with prejudice because it is time-barred, and a certificate of appealability is denied.

ENTERED:

_____
Thomas M. Durkin
United States District Judge

Dated: November 18, 2013